UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BABACAR M'BOW,

Plaintiff,

   vs.

CITY OF NORTH MIAMI, a political
Subdivision of the State of Florida,
ARTHUR H. SOREY, III, in his capacity as interim
City Manager for the City of North Miami, and
JOSEPH ROGLIERI, JR., in his capacity as Personnel
Administration Director for the City of North Miami,

Defendants.

_____/

## VERIFIED COMPLAINT FOR DECLARATORY, PRELIMINARY INJUNCTIVE, & MANDAMUS RELIEF

Plaintiff, Babacar M'Bow ("Plaintiff" or "M'Bow"), an individual, sues Defendants City of North Miami ("City"), a political subdivision of the State of Florida, Arthur Sorey, III, in his capacity as the interim City Manager for the City ("interim City Manager" or "Sorey"), and Joseph Roglieri, Jr., in his capacity as the Personnel Administration Director for the City ("Personnel Director" or "Roglieri") (collectively referred to as "Defendants"), and sets forth the verified allegations outlined below.

## I. JURISDICTION, VENUE, AND PARTIES

1.   This is an action for injunctive, declaratory, and mandamus relief to equitably enjoin and redress Defendants' unlawful deprivation of M'Bow's due process rights under the Fourteenth Amendment to the U.S. Constitution, as secured by 42 U.S.C. § 1983, and Article I, § 9 of the Florida Constitution.

2.   Jurisdiction in this matter is properly vested in the U.S. District Court for the Southern District of Florida in accordance with 28 U.S.C. §§ 1331, 1367, 1983, 2201, and 2202.

3.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because the conduct at issue in this action took place in the Southern District of Florida, and some or all of the Defendants reside in the Southern District of Florida.

HERNANDEZ LEE MARTINEZ, LLC
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

4.    Defendant City of North Miami is a political subdivision of the State of Florida and is *suri juris* in accordance with Florida Statutes § 768.28.

5.    Defendant Sorey is the interim City Manager for Defendant City and is named as a Defendant in this action in that capacity.  As the interim City Manager, Defendant Sorey is the final policymaker for the City with regard to individual personnel matters.  *See* City of North Miami Charter, Article IV, §§ 19 and 21.

6.    Defendant Roglieri is the Personnel Director for Defendant City and is named as a Defendant in this action in that capacity.

7.    At all times material hereto, Defendants acted under color of state law.

## II.    BACKGROUND & FACTS

8.    This case is about the City's unlawful and political attempt to use false, baseless, and banal accusations of sexual misconduct to ruin the reputation and career of an unwitting man—Babacar M'Bow.  Indeed, the City, through its interim City Manager, Sorey, and its Personnel Director, Roglieri, constructed and pursued a strategy of using false and outlandish accusations that were mysteriously spoon-fed to local, national, and international media outlets as a basis to remove M'Bow from his post as Director of the City's Museum of Contemporary Art ("MOCA").

9.    To add insult to injury, the City now refuses to comply with its own Code of Ordinances and Personnel Rules by denying M'Bow's rights to challenge such allegations and reveal the unlawful nature of the City's termination before the City's Personnel Board—a panel of selected members of the community.  The City's refusal to hold a hearing constitutes a continuing violation of M'Bow's civil service rights under the City's Code of Ordinances and Personnel Rules, as well as his due process rights under the U.S. and Florida Constitutions.  Consequently, M'Bow respectfully prays for declaratory, injunctive, and mandamus relief.

### A.  MOCA'S INFAMOUS HISTORY OF POLITICIZATION & TURMOIL WITHIN THE CITY OF NORTH MIAMI

10.  MOCA is a Florida not-for-profit corporation located within the City.  It has been and continues to be the center of politicization and turmoil, and an illustration of a mismanaged public-private partnership between the City and a privately managed museum.

11.  Through an Agreement, dated December 15, 2008, the City entered into a contract for management services with the MOCA Board of Trustees (acting on behalf of MOCA) (the "Management Agreement").

12. By virtue of the Management Agreement, the MOCA Board of Trustees agreed to manage MOCA's "physical plant, facilities, and all activities occurring thereon, pursuant to City of North Miami Ordinance No. 925 as adopted on Oct[.] 25 1994." Ex. A, Management Agreement.

13. After execution of the Management Agreement, the City soon became embroiled in a heated and embarrassing public dispute with the then Board of Trustees for MOCA.

14. This dispute quickly erupted into a litigated matter regarding the former Board of Trustees' attempts to merge MOCA with the Bass Museum of Art in the City of Miami Beach. *See* Ex. B, Circuit Court Complaint.

15. Moreover, the dispute between the City and the former MOCA Board of Trustees involved allegations and accusations of mismanagement, financial troubles, and malfeasance. Ex. C, *Emergency Ex-Parte Motion for Temporary Injunctive Relief and Demand for Immediate Accounting*.

16. Eventually, the dispute between the City and the now former MOCA Board of Trustees was resolved through a Settlement Agreement.  Ex. D, Settlement Agreement.

17. The settlement between the City and the former MOCA Board of Trustees, however, resulted in MOCA losing a substantial amount of funding and artwork.

18. For instance, pursuant to the terms of the Settlement Agreement, the former MOCA Board of Trustees retained approximately $424,000.00 and an undisclosed amount of funds held within a strategic reserve account. *Id.*, pp. 12-13.

19. MOCA also lost endowment funds from the Knight Foundation, as that endowment was withdrawn. *Id.*

20. And the former Board retained 205 works of art, or approximately 30% of the MOCA Collection, through the Settlement Agreement.  Ex. E, Lance Dixon, <u>MOCA to retain about 70 percent of artworks</u>, Miami Herald, November 24, 2014 (available at: http://www.miamiherald.com/news/local/community/miami-dade/north-miami/article4126235.html).

21. Upon conclusion of the litigation, MOCA's former Board of Trustees departed MOCA and created the Institute of Contemporary Art, thereby leaving MOCA without a Board of Trustees. *See id.*

Hernandez Lee Martinez, LLC
255 Aragon Avenue, Suite 200, Coral Gables, Florida 33134 – Tel: (305) 842-2100 – Fax: (305) 842-2105

**B.  THE DIRECTOR OF MOCA IS A CLASSIFIED CIVIL SERVICE POSITION UNDER THE CITY OF NORTH MIAMI'S CODE OF ORDINANCES**

22. As MOCA is a public-private partnership, its roots and governance structure derive from the City's Ordinance provisions.

23.  More specifically, Ordinance Number 925, presently codified in § 2-61, *et seq.*, of the City's Code of Ordinances, establishes the governance structure for MOCA.

24.  Notably, section 2-62(b) provides that:

> The board of trustees shall operate and manage the MOCA premises and all activities thereon on behalf of the city, pursuant to a management agreement entered into by and between the city, as owner of the premises and MOCA, as operator of such premises, in a form approved by the city attorney and executed by the city manager pursuant to authority hereby granted. The format utilized shall preserve the facility's exemption from ad valorem taxation and shall assure accomplishment of the cultural and educational mission of MOCA in compliance with all applicable grants to which the facility is a recipient.

25.  Thus, while the City owns the MOCA premises, the MOCA Board of Trustees manages the premises and all activities that may occur on the MOCA premises.

26.  Section 2-64 further states:

> The board of trustees shall be incorporated and shall have and maintain a nonprofit tax-exempt status. The moneys received by the board of trustees shall be used in the performance of their duties. The board of trustees shall conduct fund-raising projects to assist in the funding of the operational and development costs of MOCA. The city shall not be obligated, bound, or indebted for any function or activity of the board of trustees except as approved by the city budget ordinance.

27. Importantly, section 2-66 establishes the position of the Director for MOCA and provides that "[t]he museum director shall be an employee of the city, ***and shall be a member of the classified service*** and shall be assigned as provided by the city manager and approved by the board of trustees."  (Emphasis added).

28. Furthermore, the City's Code of Ordinances and Personnel Rules entitles employees to the right to challenge the City's decisions regarding termination of employment.

29. In relevant part, Rule XIII, section A(1) of the City's Civil Service Rules states:

> any employee in the classified service who deems that he or she has been demoted, removed, fined, or suspended without just cause may, within fourteen (14) calendar days of such action, request in writing a hearing before the Personnel Board to determine the reasonableness of the action . . . The Board shall, within sixty (60)

HERNANDEZ LEE MARTINEZ, LLC
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

calendar days after a request for appeal by a disciplined employee, proceed to hear such appeal[.]

Rule XIII, § A(1), Civil Service Rules for the City of North Miami, Ex. F.

30. Moreover, Article I, section 15-4 of the City's Code of Ordinances establishes the appointment process for the City's Personnel Board.  In this regard, Section 15-4 states:

> There shall be a personnel board consisting of six (6) members who shall be appointed as follows: One (1) member by the mayor (without approval of the city council) designated as Group A; one (1) member by the city council (excluding the mayor) designated as Group B; one (1) member by the city council (excluding the mayor) designated as Group C; one (1) member elected by the employees designated as Group D; one (1) member elected by the employees designated as Group E; and one (1) member by the mayor with the approval of the city council who shall be designated the "alternate".  No member of the personnel board shall be an employee of the City of North Miami.

City of North Miami Code of Ordinances, Art. I, § 15-4.

31. And Article I, section 15-5, which establishes the qualifications for appointment to the Personnel Board, states that "[e]ach member [of the Personnel Board] shall be a qualified voter of the city and shall be known to be in sympathy with the merit principle as applied to the civil service. Proof of residency is required."  *Id*. § 15-5.

32. Thus, by legislative dictate, the Personnel Board is composed of appointed members from the City's community.

33. In accordance with Article I, section 15-7, moreover, the Personnel Board's duties include: "(1) advise the personnel manager on problems concerning personnel administration; (2) advise personnel [sic.] manager in fostering the interest of institutions of learning, civic, professional and employee organizations in the improvement of personnel standards in the municipal service; (3) make any inquiry which it may consider desirable concerning the administration of personnel in the municipal service, and report to the city manager, its findings, conclusions and recommendations; (4) ***hear appeals of employees in the classified service who are suspended, reduced, or removed and report in writing to the city manager its findings and recommendations***; and (5) review the activities of the personnel department and recommend changes to [sic.] city manager in accordance with their findings."  *Id*. (emphasis added).

34. Importantly, in accordance with Article I, section 15-14(a), the Personnel Board, like the City's Personnel Administration Director, has "the power to administer oaths."  *Id*. § 15-4.

HERNANDEZ LEE MARTINEZ, LLC
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

35. Pursuant to Rule I, section (H) of the City's Civil Service Rules, "[a]ll regular and special meetings, appeal hearings and public hearing of the [Personnel] Board shall be open to the public." City of North Miami Civil Service Rules, Rule I, §H.

36. And Rule XIII, section (C) of the City's Civil Service Rules establishes the procedures for the conduct of appeal proceedings before the Personnel Board.

37. Notably, in relevant part, Rule XIII, section (C) establishes the following:

- A record of the charges and the appellants' written answer, if any, shall be included in the minutes of the Board. The testimony taken at the hearing shall be under oath and shall be transcribed.

- The admission of evidence shall be governed by the Board's rulings, with the advice of the Board's counsel. Strict rules of evidence, as in courts of law, shall not apply. Evidence is to be admitted at the discretion of the Board and pertinent information considered for the purpose of substantial justice for all parties.

- The appellant may be represented by counsel; the director of the department shall be represented by the City Attorney, other counsel, or designated representative.

- Admissible as evidence shall be written statements made by the appellants and others, transcripts of oral statements made by appellants and others, and hearsay evidence, for whatever these may be worth. This shall not be considered a limitation as to the admission of other types of evidence, or as to the consideration by the Board of any and all pertinent information.

- Appellants and all other classified employees of the City may be required to testify. Refusal to testify may be grounds for suspension without pay, fine, dismissal or removal. Admissions against interest may be admitted as evidence. A plea of self-incrimination by a witness may constitute grounds for suspension without pay, fine, dismissal or removal.

- The Board shall be free to make its determination of appellant's innocence or guilt in keeping with the public interest, based solely on the Board's reasonable interpretation of all the pertinent information available. The Board shall not be bound by a presumption of the appellant's innocence or guilt; such presumption does not prevail in administrative law. The findings of the Board shall be based on competent substantial evidence before it.

- In considering the appellant's fitness to hold employment in the classified service of the City of North Miami, the Board shall not be bound by the strict letter of the charges as drawn. The Board may allow the charges to be amended at any time, as long as an amendment is material to the charges. In general, the Board in its findings shall be

HERNANDEZ LEE MARTINEZ, LLC
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

guided, not by technicalities, but by the substance of the information developed in its hearings.

- The Board has full power to prescribe the manner of conduct of its hearings.

- After due consideration of the evidence and other pertinent information, the Board shall render its findings in writing to the appellant and to the City Manager. The Personnel Director shall report to the Personnel Board any charges made by the City Manager which reverse, modify or amend the recommendation(s) of the Personnel Board.

- The Board shall report in writing to the City Manager, the department head and the affected employee of its findings and recommendation(s) on all appeals. Thereupon, the City Manager shall make such final disposition of the matter as deemed desirable; provided however, it shall be the policy of the City that the City Manager shall follow the recommendation of the Board unless such recommendation are [sic.] clearly contrary to the good of the service.

- The Board may at its discretion:

    l.   Recommend the restoration of the employee to his or her position, and may also recommend that pay be restored retroactive to the date of removal or that part or all such pay be forfeited for that period. At its discretion, the Board may further recommend that a removal be commuted to a suspension if such action is found to be for the good of the service.

    2.   Recommend confirmation of or the increase or decrease of any suspension period or fine imposed by an appointing authority.

    3.   Recommend the demotion of the employee to a class for which a lower maximum rate of compensation is prescribed.

    4.   Recommend the removal of the employee from the position. A copy of the written statement of reasons given for any suspension, fine or removal, and a copy of any written reply hereto by the employee involved, together with a copy of the decision of the Board, shall be filed as a public record in the office of the Personnel Department.

City of North Miami Civil Service Rules, Rule XIII, §(C).

38. The above-cited Ordinances and Personnel Rules make it apparent that: (1) the Personnel Board has the authority to hear appeals brought by employees challenging their employment termination; (2) employee appeal hearings are open to the public; (3) testimony taken at an appeal hearing is under oath; (4) classified employees of the City can be compelled to testify and

HERNANDEZ LEE MARTINEZ, LLC
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

disciplined for their refusal to testify; (5) upon conclusion of an appeal hearing, the Personnel Board must render its findings in writing and provide them to the employee challenging the termination; (6) the City Manager must follow the recommendation of the Personnel Board unless he or she makes a finding that the Personnel Board's recommendation is clearly contrary to the good of the service; and (7) in its recommendation, the Personnel Board has the discretion to consider a range of disciplinary options, including the complete reversal of the termination and full restoration of pay, partial restoration of pay, or conversion of the termination to a suspension.

39. In practical terms, the above means that M'Bow is entitled to: (1) a hearing, conducted in a public forum, before neutral arbiters from the North Miami community; (2) representation by legal counsel at said public hearing; (3) proffer evidence on his behalf; (4) take testimony under oath; (5) cross examine witnesses; (6) compel the attendance of unwilling witnesses from the classified employee ranks (at the risk of those witnesses facing employment disciplinary actions for their refusal to testify); (7) challenge the unsworn accusations asserted against him thus far; (8) a written record of the proceedings; and (9) written findings supporting the Personnel Board's ultimate conclusions and recommendations related to his employment.

40. Additionally, the Personnel Board would have the discretion to completely reverse M'Bow's termination or recommend a lesser discipline, and the City Manager would be required to follow the recommendation of the Personnel Board unless he could make a showing that said recommendation was contrary to the good of the service.

41. Indeed, given that M'Bow does not have any disciplinary history at all, it is quite possible that once given the opportunity to contest and challenge the unsworn accusations asserted against him, the Personnel Board would reverse M'Bow's termination, which, again, the City Manager could not overturn without finding that said recommendation was clearly contrary to the good of the service.

42. Thus, the above-cited Ordinances and Personnel Rules provide M'Bow with procedural due process in relation to his employment status with the City of North Miami.

43. Sorey, in his capacity as the interim City Manager and final policymaker for the City, through his January 11, 2016 correspondence denying M'Bow's request for a hearing before the Personnel Board, denied M'Bow these basic rights and, therefore, deprived him from exercising his due process rights. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 576-77 (1972).

HERNANDEZ LEE MARTINEZ, LLC
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

## C.  M'BOW SUCCEEDS AS THE STEWARD OF MOCA DESPITE THE TURMOIL AT THE CITY OF NORTH MIAMI

44. Against the backdrop of the governing law and the political and financial turmoil—MOCA's loss of substantial funds and a significant portion of its collection of artwork, as well as the exodus of its former Board of Trustees—the City selected M'Bow as the Director of MOCA (a classified civil service position).

45. The City recognized that M'Bow was well qualified to lead MOCA.  M'Bow is a Senegal-born scholar who has an advanced degree (DEA) in the sociology of image from Paris VIII in Paris, France.  He has written a number of books, including *Philippe Dodard: The Idea of Modernity in Contemporary Haitian Art*, and regularly serves as a guest lecturer and art exhibit curator for several universities.  Prior to serving as the Director of MOCA, M'Bow spent eleven years working for the Broward County Libraries and also managed a commercial art gallery in Little Haiti.

46. Additionally, M'Bow is well respected in his field and has garnered recognition for his expertise and leadership in the arts.  For instance, in 2006, Miami-Dade County bestowed on M'Bow the Miami-Dade County "Cultural Ambassadors Award" for his leadership, support, and assistance with the preservation and promotion of art and culture throughout Miami-Dade County.

47. M'Bow accepted the Director position with the goal of leading MOCA into a new apolitical era of success and achievement within the art world.  M'Bow left his longstanding civil service position with Broward County Libraries in reliance on, among other factors, the MOCA Director position's civil service classification.  And M'Bow achieved goals and feats previously considered to be impossible for the troubled museum.

48. Under M'Bow's stewardship, in fact, MOCA flourished and garnered international acclaim, received substantial monetary donations, and displayed innovative exhibitions involving internationally renown artists, such as Colombian artist Carlos Salas, whose recent installation at MOCA was described by the Miami Herald as follows:

> Colombian artist Carlos Salas has dramatically transformed North Miami's Museum of Contemporary Art (MOCA) into a church to serve as a battleground of spirit.  Afforded carte blanche by museum director Babacar M'Bow, the artist, who originally trained as an architect, stripped the space to a nave-like shell to present his highly-charged abstract paintings, which are internationally collected and exhibited.  Monday night's preview drew exclamations of awe and embraces of triumph for the challenging synthesis of venue and artwork.

**HERNANDEZ LEE MARTINEZ, LLC**
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

<u>Art Basel: Carlos Salas: Latin America and the Global Imagination at MOCA North Miami</u>, Miami Herald, December 1, 2015 (http://miamiherald.typepad.com/miami-art-watch/private-vip-events/page/3/).

49. Even the Interim City Manager, who terminated M'Bow's employment as the City's final policymaker with regard to individual personnel matters, publicly stated to the New York Times that "[w]ithout Babacar, [MOCA] would have completely folded . . . . I think Babacar had an instrumental part in keeping the museum alive."  Nick Madigan, <u>Sexual Harassment Allegations Add to a Florida Museum's Troubles</u>, N.Y. Times (Art & Design Section), January 8, 2016 (http://www.nytimes.com/2016/01/09/arts/design/sexual-harassment-allegations-add-to-a-florida-museums-troubles.html?_r=0).

50. Moreover, under M'Bow's leadership, MOCA created stimulating exhibits as well as educational programming that made contemporary art easily accessible to the diverse residents of the City of North Miami and all of South Florida.

51. M'Bow furthermore kept himself and MOCA out of the political fray and avoided the trivialities of local politics while he led MOCA to a position of prominence and prestige within the art world.

### D. THE CITY OF NORTH MIAMI TERMINATED M'BOW'S EMPLOYMENT AND REFUSED TO PROVIDE HIM A HEARING BEFORE THE CITY'S PERSONNEL BOARD AS IT IS REQUIRED TO DO UNDER ITS OWN CODE OF ORDINANCES AND RULES

52. Despite M'Bow's success as the steward of MOCA, the interim City Manager, Sorey, and the Personnel Director, Roglieri, pursued a strategy of using false and outlandish accusations, mysteriously fed to media outlets, as a basis to remove M'Bow as the Director of MOCA. Moreover, the City, through Sorey, denied M'Bow's rights to challenge such accusations and Sorey's termination decision through a hearing before the members of the community who serve on the City's Personnel Board.

53. In the process of doing so, and in an effort to prevent the true nature of their actions from coming to light, the City violated, and continues to violate, M'Bow's due process rights, protected under both the U.S. Constitution and the Florida Constitution, and the City's Code of Ordinances and Rules.

HERNANDEZ LEE MARTINEZ, LLC
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

54. More specifically, based upon abhorrent and contrived accusations of a disgruntled, difficult, and unscrupulous employee, the interim City Manager, along with his cohort, the Personnel Director, launched a witch hunt against M'Bow, which they attempted to disguise as a legitimate and fair "investigation".

55. According to the City's records, this matter began when one employee (the "Complainant") purportedly submitted an email complaint, on December 10, 2015, against M'Bow and Alan Waufle (the Assistant Director of MOCA), asserting that Mr. Waufle used a derogatory American slang term in reference to a MOCA vendor during a MOCA Staff Meeting.  Ex. G, Joseph Roglieri 12/31/2015 Memorandum.[1]

56. The interim City Manager, in accordance with Article IV, sections 19 and 21 of the City's Charter, is the final policymaker for the City with regard to individual personnel matters (*i.e.*, hiring and firing City employees).

57. In performance of this function, the interim City Manager, on December 10, 2015, placed M'Bow on an indefinite administrative leave to purportedly conduct an investigation into the salacious accusations asserted against him.  Then, on December 31, 2015, days after M'Bow returned from vacation, and two weeks after being placed on administrative leave, the interim City Manager terminated M'Bow. Ex. H, Notice of Termination.

58. M'Bow submitted a request for a hearing on January 8, 2016—well within the 14-day period outlined in Rule XIII.  Ex. I, Request for Hearing.

59. Because M'Bow was placed on paid administrative leave prior to his termination he is entitled to remain on paid administrative leave until such time as a personnel hearing is held and the Personnel Board issues its final decision.

60. The City, through its interim City Manager, however, unlawfully denied M'Bow's request for a hearing through correspondence he signed on January 11, 2016.  Ex. J, Denial of Request for Hearing.

61. In denying M'Bow's request for a hearing, the City relied upon a Personnel Action Form purportedly signed by the then City Manager and the then Finance Director that purports to have

---

[1] The truth of the matter is that M'Bow, a 62 year-old native of Senegal, did not completely hear Mr. Waufle and did not even know the meaning of what was said; immediately after he learned the meaning of a part of Mr. Waufle's statement, M'Bow reprimanded Mr. Waufle, who instantly apologized for his statement.  Notwithstanding, this purported complaint snowballed into a series of false and unsupported allegations of misconduct, that even the City has discounted in writing.

HERNANDEZ LEE MARTINEZ, LLC
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

changed M'Bow's position as Director of MOCA to an "[u]nclassified appointment in accordance with [sic.] memo from Interim City Manager." *See id.*, p. 3.

62. Neither a personnel action form nor a memorandum from a City employee can legally amend an ordinance as it is a fundamental tenet of Florida law that only a lawfully adopted ordinance can amend an ordinance. *See* Fla. Stat. § 166.011 *et seq*.

63. To make matters worse, the City, acting under color of state law, *continues to deny M'Bow a hearing* before the City's Personnel Board.

64. Further undermining M'Bow's due process rights is the fact that the City, through its interim City Manager and Personnel Director, launched a rushed and hasty effort to hire a new Director for MOCA.

65. Indeed, on January 19, 2016, through its website, Defendant City listed the position of Director of MOCA as an open job position and invited applications for said position. Ex. K, MOCA Director Position Advertisement.

66. The job listing in question indicates that the application closing date was February 18, 2016 at 11:59 pm. *Id*.

67. The City's efforts to hire a new Director for MOCA are being conducted in a hasty and rushed manner, as the Miami Herald's Editorial Section recently recognized. *See* <u>Get serious about MOCA, N. Miami</u>, Miami Herald Editorial, February 10, 2016, Ex. L.

68. The City's hasty attempt to hire a new Director for MOCA is a simple and transparent ploy to undermine M'Bow's fundamental right to a hearing before the City's Personnel Board and, thereby, prevent the biased, superficial, deceptive, and shoddy nature of the City's investigation from coming into public view.

69. This hurried hiring process, if permitted to continue, could serve to foreclose M'Bow's exercise of his due process rights, as the City would likely use the hiring of a new Director as a means to undermine and obviate the necessity of a personnel hearing in that the MOCA Director position will have been filled by a third party, and, therefore, no longer available regardless of the outcome of this case and such hearing.

70. The City, Sorey, and Roglieri, know that the City can only terminate M'Bow for just cause, and that the City must provide a hearing before an impartial Personnel Board comprised of members of the community. Despite this, Defendants terminated M'Bow without just cause and continue to deny him a hearing.

Page 12 of 15

71. The harm here, however, is not just limited to M'Bow.  Allowing the City's action to stand would, in effect, afford unfettered authority to an unelected official so as to permit him to single-handedly amend or rescind lawfully enacted ordinances at his discretion.  And this would, thereby, decimate and entirely undermine the concept of democracy.

72. Indeed, the officials who enacted Ordinance 925 were elected by the citizenry of the City of North Miami, and, as such, they were bestowed with the authority to legislate.  A city manager, however, does not have such authority.  Thus, if permitted to stand, this unlawful usurpation of legislative authority by an unelected official would create a means to bypass the fundamental dictates of Florida law, as ordinances could be adopted and amended by internal memoranda from unelected officials.  In time, such underhanded ploys, such as that at issue here, would serve to wholly abrogate the rights of the citizenry.  As a result, it is of the utmost importance that the deprivation of M'Bow's fundamental right to a hearing not be permitted to stand.

73. Prior to filing this Verified Complaint for Emergency Preliminary Injunctive and Declaratory Relief, M'Bow complied with all conditions precedent to pursuing this action and such conditions have been waived or otherwise satisfied.

74. M'Bow submitted his request for a hearing in accordance with the parameters set forth in Rule XIII of the City's Civil Service Rules, and thus, has demonstrated a strong likelihood of success on the merits.

75. Given that the City failed to comply with its own law when it refused M'Bow's request for a hearing—despite the express dictates of said law and M'Bow's obvious compliance with the parameters set forth therein—M'Bow does not have an adequate remedy at law to redress the City's actions.

76. Furthermore, if the City is permitted to hire a new Director for MOCA without M'Bow first being afforded a hearing—a right to which he is lawfully entitled—M'Bow will suffer irreparable harm, as there will not be a meaningful way for him to be restored to his position.

77. Moreover, enjoining the City from hiring a new Director for MOCA until the Court issues a declaration regarding M'Bow's lawful entitlement to a hearing will serve the public interest, as it will preserve the status quo, permit M'Bow to vindicate his due process rights, preclude the City from inequitably taking contrary legal positions as it deems fit, and ensure that the public resources and tax dollars of the City will not be unnecessarily expended through a premature and unlawful hiring process.

HERNANDEZ LEE MARTINEZ, LLC
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

78.  As outlined above, M'Bow has a justiciable question as to whether the City's denial of his request for a hearing before the Personnel Board, based upon the  City's contention that M'Bow's position as Director of MOCA was unclassified in accordance with a memo from a City employee, violated Florida law andthe City's own Code of Ordinances.

79.  Likewise, M'Bow, as a classified employee, had a clear legal right to a hearing. And, in accordance with its own Civil Service Rules, the City had a clear legal duty to hear M'Bow's appeal within 60 calendar days after M'Bow submitted his request for hearing. (Rule XIII, § A(1), Civil Service Rules for the City of North Miami, "the Board shall, within sixty (60) calendar days after a request for appeal by a disciplined employee, proceed to hear such appeal[.]"). This entitles M'Bow to mandamus relief.

### III.   REQUEST FOR RELIEF

**WHEREFORE**, M'Bow requests that the Court:

(a) Order a speedy hearing pursuant Federal Rule of Civil Procedure 57;

(b) Enjoin Defendants City (including its agents and representatives), Sorey, and Roglieri from proceeding with the hiring of a new Director of MOCA until the Court adjudicates M'Bow's right to declaratory and/or mandamus relief in this action;

(c) Declare that the City's purported reclassification of M'Bow's position as Director of MOCA was unlawful and without legal effect;

(d) Declare that M'Bow is entitled to a hearing before the City's Personnel Board regarding his employment termination;

(e) Issue mandamus relief directing the City to afford M'Bow a compliant hearing before its Personnel Board regarding his employment termination;

(f) Award M'Bow damages, attorneys' fees, and costs; and,

(g) Grant M'Bow such further relief as the Court deems appropriate.

Respectfully submitted,

**HERNANDEZ LEE MARTINEZ, LLC**

*Counsel for Plaintiff Babacar M'Bow*
255 Aragon Avenue, Suite 200
Coral Gables, Florida 33134
Telephone: (305) 842-2100
Facsimile: (305) 842-2105

HERNANDEZ LEE MARTINEZ, LLC
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

By: *s/Bridgette N. Thornton*
    Bridgette N. Thornton
    Florida Bar No. 48222
    Bridgette@hlmlegal.com
    Eric A. Hernandez
    Florida Bar No. 340730
    Eric@hlmlegal.com

**HERNANDEZ LEE MARTINEZ, LLC**
255 ARAGON AVENUE, SUITE 200, CORAL GABLES, FLORIDA 33134 – TEL: (305) 842-2100 – FAX: (305) 842-2105

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Babacar M'Bow, declares as follows:

1. My name is Babacar M'Bow.

2. I am the Plaintiff identified in the present action.

3. I have personal knowledge of the facts at issue in this action and of the averments set forth in the foregoing *Verified Complaint*, and if called on to testify I would competently testify as to the matters stated herein.

4. I, furthermore, declare and verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the factual statements and averments contained within the foregoing *Verified Complaint* are true and correct to the best of my knowledge and belief.

Executed on this ___ day of March, 2016.

**Babacar M'Bow**